McEaeland, J.,
delivered the opinion of the court.
This is an action of unlawful detainer, commenced before three justices of the peace, by Hall against Dodson. Hall made a written lease of certain premises to Luffman, who assigned the same to Lyttleton, and he to Dodson, who was in possession at the commencement of the suit. The case turns upon the construction of this lease. The material parts are as follows: “ Bailey B. Hall has agreed with Robert Luffman to lease him the part of land known as the part of George Dutton’s land, as the guardian of said George Dutton,” etc. The following is the agreement: “ Said Luffman to cultivate all the old lands that is now in cultivation, and is to pay the third, and is to, repair the fencing, and is to be paid out of the proceeds of the land. Luffman is to put the farm in good farming order, and is to clear twenty acres of land, or more if desired, and- is to put it under a good fence, and is to have three crops off of all the land he clears. Luffman is to clear six acres for the present year (1868), the next year ten acres, and the rest to be agreed to hereafter, etc. Luffman is to take care of the timber. What buildings he puts up is to be cut off of the land that he clears, except board timber.” This has no date, but shows it was executed in the year 1868. The six acres were cleared by Luffman in 1868, and Dodson, his assignee, cleared *204 the ten acres in 1869, and in the year 1870 cleared two acres, as the proof shows, because Hall did not want any more cleared. The suit was commenced the 3d of January, 1872, after three crops'had been made upon the land cleared in 1868 and 1869, but before three crops had been made on the land cleared in the year 1870.
Under the construction given the lease by the Circuit Judge, there was verdict and judgment for all the land except the two acres cleared in 1870. Dodson appealed.
The contract is indefinite and somewhat ambiguous in its terms. No time is definitely fixed for its termination. It clearly appears, however, that of the twenty or more acres that were to be cleared, four acres were to be cleared after the year 1869, which would be, of course, as late as 1870. From this the tenant was to receive three crops, which would extend the time as to this four acres to the end of the year 1872. This is not denied; but it is insisted that, as to the land cleared in 1868 and 1869, the lease terminated when three crops had been received therefrom, which was before the suit began.
To this construction there are several serious objections. First, the lease appears to be one entire contract, and for one entire term, whatever it may be. The whole farm is embraced in the lease, and it was contemplated that the lessee might reside upon it’. This is apparent from the following clauses of the article : “ Lufiman is to put the farm in good farming order. * * Is to cultivate all the old land that *205 is now in cultivation, and pay the third. * * Luff-man is to take care of the timber. What buildings he puts up are to be cut off the land that he clears, except board timber.” So it is reasonably certain that the lease embraced the farm, and the lessee might put up buildings probably to reside in. In this view, it would be more reasonable to hold that the lease would terminate as to the entire farm at the same time, in absence of anything to the contrary ; and as it is conceded that the lease, as to the land cleared in 1870, extended to the year 1872, this would carry the entire lease to that time.
Again, the construction given that the lease terminated, as to each piece of land cleared, when the lessee had received three crops therefrom, would furnish no rule by which to determine when the lease terminated as to the old land. This the lessee was to cultivate and pay one-third, after repairing the fences, and this may have embraced a large part of the farm; and as to this, there is nothing to indicate that the lease was terminated at any period prior to the termination of the entire term.
This construction does not give the lessee the rents for any longer period than agreed upon — the term upon which rents were to be paid are fixed, that is, one-third of the crop. - We are of opinion that the most reasonable construction to be given this lease is, that it extended long enough to allow the lessee to remain in possession and receive three crops from the land cleared in 1870, that is, to the end of the year 1872; but that the lessee would, of course, pay rents *206 as agreed upon for the old lands, and the lands cleared in 1868 and 1869 after the third crop.
From this view, it results that the judgment must be reversed.